# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

MICAH ALAN COX,

|  |  |  |
|---|---|---|
| Petitioner, | : | Case No. 3:13-cv-200 |
| - vs - | | District Judge Thomas M. Rose |
| | | Magistrate Judge Michael R. Merz |
| ROD JOHNSON, WARDEN, | | |
| Madison Correctional Institution, | | |
| . | : | |
| Respondent. | | |

# REPORT AND RECOMMENDATIONS

This habeas corpus case is before the Court for decision on the merits. Petitioner has filed the Petition (Doc. No. 3) and a Traverse (Doc. No. 17); Respondent has filed an Answer/Return of Writ (Doc. No. 11) along with the state court record (Doc. No. 8) and a Reply to the Traverse (Doc. No. 19).

Cox pleads the following Grounds for Relief:

> **Ground One:** The trial court violated the Petitioner's Sixth and Fourteenth Amendment rights by not granting the Petitioner a hearing on the basis of his *pro se* motion filed on December 17, 2010, to remove his counsel of record.
>
> **Supporting Facts:** On or about December 17, 2010, I filed a *pro se* motion to remove my counsel. The motion was journalized on the court docket. During the ten weeks between the motion and the trial, I never had a hearing. I was forced to proceed to trial despite my pending motion.

1

**Ground Two:** Insufficient evidence exists to support the Petitioner's convictions in violation of his Fourteenth Amendment due process rights.

**Supporting Facts:**  For Count 1, I was merely a passenger in the car where a drug deal took place; a co-conspirator's testimony is not enough to establish a minor was in the car; and another co-defendant testified that I had nothing to do with the transaction

.

For Count 2, the informant testified that the back seat passenger, Chris, not me, provided the drugs. This deal was arranged between informants and completed by Rodriguez and Chris.

For Count 3, I was not in possession, actual or constructive, of the subject of [sic] cocaine. There is no evidence that the drugs were found on me. I was not the driver of the vehicle containing drugs.

For Count 4, this drug deal never took place. It stemed [sic] from a phone call. In which the detective testified on stand that he was not sure of who he was speaking to on the phone that day, nor does he even know who the phone belonged to.

**Ground Three:**  The petitioner received ineffective assistance of trial counsel in violation of the sixth and fourteenth amendments for his failure to properly object to the admission of the audio tapes as trial exhibit number one.

**Supporting Facts:** Trial counsel failed to object to the admission of exhibit number one which was used in its entirety to convict petitioner of all counts. Prosecutor alerted the court that there was inadmissible portions that the jury could not hear. Prosecutor and defense asked the judge to allow the bailiff in the jury room to fast forward the tape past the bad portions, so the jury wouldn't be tainted with inadmissible evidence. This agreement was moot. The jury had already heard exhibit number one in its entirety twice in open court. The judge stated had the defense objected to exhibit number one he would have probably granted it. For this reason, furthermore 80 per cent of the State's case against Petitioner was Exhibit #1 audio tape.

**Ground Four:** The petitioner received ineffective assistance of appellate counsel in violation of his Sixth and Fourteenth Amendment rights.

2

> **Supporting Facts:** Appellate counsel failed to timely notify the Petitioner of the denial of his direct appeal, causing him to miss his deadlines to file a timely appeal to the Supreme Court of Ohio, and an application for re-opening with the appellate court. Furthermore, the appellate attorney failed to raise the meritorious issues contained in both Petitioner's 26(B) Application for Reopening and the brief accompanying this petition.

(Petition, Doc. No. 3, PageID  85, 90, 92-93, 94, 96).


**Procedural History**


Cox was indicted by the Greene County Grand Jury in 2010 on one count of conspiracy to commit trafficking in cocaine (Ohio Revised Code § 2923.01(A)(2))(Count 1); three counts of trafficking in cocaine (Ohio Revised Code § 2925.03(A)(1)(Counts 2, 4 and 5); and two counts of possession of a controlled substance, cocaine (Ohio Revised Code § 2925.11(A)) (Counts 3 and 6).  Cox was convicted by a jury on all counts.  The trial court merged Counts 1 through 3 and Counts 5 and 6 under Ohio allied offenses statute, Ohio Revised Code § 2941.25, and then sentenced Cox to an aggregate term of sixteen years imprisonment.

Cox appealed raising thirteen assignments of error, but the Second District Court of Appeals affirmed the conviction and sentence.  *State v. Cox*, 2012-Ohio-2100, 2012 Ohio App. LEXIS 1839 (2nd Dist. 2012).  Having missed the forty-five day deadline for appeal to the Ohio Supreme Court, Cox sought a delayed appeal without success.  *State v. Cox,* 133 Ohio St. 3d 1410 (2012).  Cox filed an application to reopen his direct appeal to raise claims of ineffective assistance of appellate counsel, but the Second District rejected the application as untimely. *State v. Cox*, Case No. 2011 CA 19 (2nd Dist. Feb. 25, 2013)(unreported, copy at Return of Writ,

Doc. No. 8-1, PageID 450-52).  The Ohio Supreme Court declined jurisdiction over a subsequent

appeal. *State v. Cox*, 135 Ohio St. 3d 1460 (2013).  Cox then filed his Petition in this Court.

# Analysis

**Ground One:  Due Process Violation for Failure to Hold a Hearing on Removal of Counsel**

In his First Ground for Relief, Cox claims he was denied due process of law when the

Greene County Common Pleas Court failed to hold a hearing on his *pro se* motion to replace his

trial attorney.

Respondent asserts this Ground for Relief (as well as Grounds Two and Three) are barred

by Cox's procedural defaults in presenting them to the Ohio Supreme Court.

The procedural default defense in habeas corpus is described by the Supreme Court as

follows:

> In all cases in which a state prisoner has defaulted his federal
> claims in state court pursuant to an adequate and independent state
> procedural rule, federal habeas review of the claims is barred
> unless the prisoner can demonstrate cause of the default and actual
> prejudice as a result of the alleged violation of federal law; or
> demonstrate that failure to consider the claims will result in a
> fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *see also Simpson v. Jones,* 238 F.3d 399, 406

(6th Cir. 2000).  That is, a petitioner may not raise on federal habeas a federal constitutional right

he could not raise in state court because of procedural default. *Wainwright v. Sykes*, 433 U.S. 72

(1977); *Engle v. Isaac*, 456 U.S. 107, 110 (1982).  Absent cause and prejudice, a federal habeas

petitioner who fails to comply with a State's rules of procedure waives his right to federal habeas corpus review. *Boyle v. Million*, 201 F.3d 711, 716 (6th Cir. 2000)(citation omitted); *Murray v. Carrier*, 477 U.S. 478, 485 (1986); *Engle*, 456 U.S. at 110; *Wainwright,* 433 U.S. at 87. *Wainwright* replaced the "deliberate bypass" standard of *Fay v. Noia,* 372 U.S. 391 (1963). *Coleman,* 501 U.S. at 724.

The Sixth Circuit Court of Appeals requires a four-part analysis when the State alleges a habeas claim is precluded by procedural default. *Guilmette v. Howes,* 624 F.3d 286, 290 (6th Cir. 2010)(*en banc*); *Eley v. Bagley*, 604 F.3d 958, 965 (6th Cir.), *cert. denied sub nom, Eley v. Hauk,* __ U.S. __, 131 S.Ct. 822 (2010); *Reynolds v. Berry*, 146 F.3d 345, 347-48 (6th Cir. 1998), *citing Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986); *accord Lott v. Coyle*, 261 F.3d 594, 601-02 (6th Cir. 2001); *Jacobs v. Mohr*, 265 F.3d 407, 417 (6th Cir. 2001).

> First the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule.
> . . . .
>
> Second, the court must decide whether the state courts actually enforced the state procedural sanction, citing *County Court of Ulster County v. Allen*, 442 U.S. 140, 149, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979).
>
> Third, the court must decide whether the state procedural forfeiture is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim.
>
> Once the court determines that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner must demonstrate under *Sykes* that there was "cause" for him to not follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.

*Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986).

There is no question that Ohio has a rule requiring appeals from the intermediate court of appeals to the Ohio Supreme Court to be taken within forty-five days, that that rule was actually enforced against Cox in this case, and that the rule is an adequate an independent stare ground of decision. *Bonilla v. Hurley,* 370 F.3d 494, 497 (6th Cir. 2004).  The question is whether Cox can show adequate cause to excuse his default.

The record shows that the Second District Court of Appeals rejected this claim on the merits in its decision of May 11, 2012.  Under Ohio Sup. Ct. R. Prac. 2.2(A)(1), Cox's notice of appeal was due to be filed not later than forty-five days later or by June 24, 2012.  No notice of appeal was filed until August 28, 2012, in conjunction with Cox's motion for delayed appeal (Return of Writ, Exhibits 15 and 16, PageID 377, 380).  The Warden notes that Cox claimed in his motion for delayed appeal that he never received the appellate decision until July 30, 2012, but attached a letter from his appellate attorney stating it had been sent earlier (Answer/Return, Doc. Noo. 11, PageID 1032).  The Warden also notes Cox never filed a memorandum in support of jurisdiction setting out the claims on which he sought to appeal.  *Id.*

Cox responds by asserting his attorney's statement of earlier transmittal is not correct. To support that claim, Cox moved to expand the record (Doc. No. 4), which motion the Court granted (Notation Order of September 7, 2013).  Examining the mail logs attached to the motion to expand, the Magistrate Judge is persuaded that Cox's procedural default in filing late is excused by his appellate attorney's ineffective assistance in failing to provide him notice of the appellate decision with sufficient time to appeal to the Ohio Supreme Court.  In his letter of July 30, 2012, counsel writes "[t]he Court proceeded to rule on the same without oral argument and issued their opinion on May 15, 2012, affirming the decision of the Trial Court.  We sent a copy

a copy of that decision to you for review as well."  (Motion, Doc. No. 4-12, PageID 160.)

Counsel is inaccurate by four days on the date of issuance of the decision.  More importantly, he

never states when the decision was sent and provides no corroboration of his statement that it

was mailed.  When this lack of detail is combined with the mail logs from Cox's place of

incarceration, the Magistrate Judge is persuaded that the appellate attorney did not give Cox

notice in time for him to appeal to the Ohio Supreme Court.  Notifying a client of an adverse

decision at the court of appeals level is part of the duty of appellate counsel and failure to do so

is ineffective assistance of appellate counsel.  *Smith v. Ohio Dep't of Rehab. & Corr.*, 463 F.3d

426 (6th Cir. 2006).

      The Warden asserts that this omission on counsel's part cannot be excusing cause for the

procedural default because

> the claim of attorney error in not providing him with the decision
> was never fairly presented to the Ohio courts, and so that claim is
> itself procedurally defaulted. It therefore cannot serve as cause for
> a procedural default of Grounds One through Three. See *Edwards
> v. Carpenter*, 529 U.S. 446 (2000); *Abshear v. Moore*, 354 Fed.
> Appx. 964 (6th Cir. 2009). While it is true that Petitioner relied on
> this excuse in his motion for delayed appeal to the Ohio Supreme
> Court on direct appeal, and in his motion to file a late Ohio App.
> 26(B) application, Petitioner has never fairly presented to the Ohio
> courts any **substantive** constitutional claim that his attorney
> rendered him ineffective assistance by failing to timely provide
> him with the Ohio appellate court decision affirming his
> conviction.

(Reply to Traverse, Doc. No. 19, PageID 1105, emphasis added.)

      It is true that a claim of ineffective assistance of appellate counsel can be forfeited by

failing to raise it in the state courts. *Edwards, supra.*  But a habeas petitioner is not required to

present an ineffective assistance of appellate counsel claim to the state courts as a substantive claim in order to fairly present the claim to them.  Cox did not "sandbag" the Warden by holding back his claim that his attorney was ineffective until he reached this Court.  Instead, he presented the same facts on which he relies here to the Ohio Supreme Court in his motion for delayed appeal.[1]  The fact that that court did not find in his favor does not preclude this Court from doing so because the question of whether a habeas petitioner has procedurally defaulted a claim is a question of federal law.  *Henry v. Mississippi*, 379 U.S. 443, 447 (1965); *Isaac v. Engle,* 646 F.2d 1129, FN3 (1980).

The Magistrate Judge concludes that Cox's delay in appealing to the Ohio Supreme Court is excused by his appellate attorney's ineffectiveness in furnishing him with a copy of the appellate opinion.

The Court then turns to the merits of Ground One.  As noted above, this claim was decided on the merits by the Second District Court of Appeals.  Judge Donovan wrote for that court:

> [*P22] "THE TRIAL COURT ERRED IN NOT GRANTING THE DEFENDANT A HEARING ON THE BASIS OF HIS PRO SE MOTION FLED ON DECEMBER 17, 2010, TO REMOVE HIS COUNSEL OF RECORD."
>
> [*P23] In his first assignment, Cox contends that the trial court erred when it failed to hold a hearing regarding his December 17, 2010, motion to remove his counsel.
>
> [*P24] "An indigent defendant has no right to have a particular attorney of his own choosing represent him. He is entitled to

---

[1] The questions before the two courts are different of course.  The Ohio Supreme Court had to decide whether to allow a delayed appeal, a matter within that court's exclusive discretion.  There is no federal constitutional right to a delayed state court appeal upon a finding that the failure to timely appeal is caused by ineffective assistance of counsel.  But the Ohio Supreme Court was presented with the same facts and with a quite parallel question:  should the delay in filing be excused when it was caused by something outside the appellant's control?

competent representation by the attorney the court appoints for him. Therefore, in order to demonstrate the good cause necessary to warrant removing court appointed counsel and substituting new counsel, defendant must show a breakdown in the attorney-client relationship of such magnitude as to jeopardize defendant's Sixth Amendment right to effective assistance of counsel." *State v. Coleman*, 37 Ohio St.3d 286, 292, 525 N.E.2d 792 (1988); *State v. Murphy*, 91 Ohio St.3d 516, 523, 2001 Ohio 112, 747 N.E.2d 765.

[*P25] Disagreement between the attorney and client over trial tactics and strategy does not warrant a substitution of counsel. *State v. Furlow*, 2d Dist. Clark No. 03CA0058, 2004 Ohio 5279; See *State v. Glasure*, 132 Ohio App.3d 227, 724 N.E.2d 1165 (7th Dist.1999). Moreover, mere hostility, tension and personal conflicts between attorney and client do not constitute a total breakdown in communication if those problems do not interfere with the preparation and presentation of a defense. *Furlow*, supra.

[*P26] The decision whether or not to remove court appointed counsel and allow substitution of new counsel is addressed to the sound discretion of the trial court, and its decision will not be reversed on appeal absent an abuse of discretion. *Murphy*, supra. The term "abuse of discretion" implies that the court's attitude is unreasonable, arbitrary, or unconscionable. *State v. Adams*, 62 Ohio St.2d 151, 404 N.E.2d 144 (1980).

[*P27] Initially we note that the trial court's failure to rule on Cox's motion to remove counsel constituted an implicit ruling that the motion was denied. ⚓When a trial court does not specifically rule on a motion, the court is presumed to have overruled it. *Hosta v. Chrysler*, 2d Dist. Greene No. 2008 CA 35, 2008 CA 36, 2008 Ohio 4392.

[*P28] In his motion to remove, Cox argued that his counsel had failed to allow him to hear and watch the audio and video recordings made by the A.C.E. Task Force of the drug transactions even though Cox had asked his counsel if he could. We note Cox's attorney had filed and conducted a motion to suppress this exact same evidence two months earlier. We do not have a transcript of this hearing to discern what, if anything, Cox saw and heard at that time. Nevertheless, Cox did not raise any issues of ineffective assistance prior to the second trial setting. Cox further stated that he and his counsel disagreed regarding how the case should be

9

handled. Cox, however, failed to state in his motion any specific issues over which he and his counsel disagreed.

[*P29] We also note that Cox filed his motion to remove his counsel only three days before the first trial date which had been set by the trial court approximately three months prior. Cox, however, failed to appear on the first day of trial, and another date had to be set on which to begin the trial. Clearly, the timing of the motion to remove and his non-appearance on the first trial date suggests that his request was made for the purposes of delay and not because counsel was in any way deficient in his performance.

[*P30] Lastly, we note that Cox failed to express any dissatisfaction with the performance of his appointed counsel when he appeared for the second trial date on February 28, 2011. Had Cox still been dissatisfied with his counsel's representation when the trial finally began, it follows that he could have easily voiced his concerns to the trial court. Moreover, even if Cox and his counsel failed to agree regarding trial tactics, that reason, standing alone, would be insufficient to warrant a substitution of counsel.

[*P31] Upon review, we find that the record before us suggests that Cox filed his pro se motion to remove his counsel for the purposes of delay, that is, before the second trial date he did not express any ongoing dissatisfaction with his attorney. On this record, the trial court did not abuse its discretion when it failed to question Cox regarding the allegations made in his motion, thereby implicitly overruling his motion to remove counsel.

[*P32] Cox's first assignment or [sic] error is overruled.

*State v. Cox,* 2012-Ohio-2100, 2012 Ohio App. LEXIS 1839, ¶¶ 22-32 (2nd Dist. May 11, 2012).

When a state court decides on the merits a federal constitutional claim later presented to a federal habeas court, the federal court must defer to the state court decision unless that decision is contrary to or an objectively unreasonable application of clearly established precedent of the United States Supreme Court.  28 U.S.C. § 2254(d)(1); *Harrington v. Richter*, 562 U.S. ___, 131 S. Ct. 770, 785 (2011); *Brown v. Payton,* 544 U.S. 133, 140 (2005); *Bell v. Cone*, 535 U.S. 685, 693-94 (2002); *Williams (Terry) v. Taylor,* 529 U.S. 362, 379 (2000).

10

There appears to be no doubt that Cox filed a motion to remove his attorney and substitute different counsel, that the trial court failed to conduct a hearing on that motion and thereby effectively denied it, and that Cox therefore proceeded to trial with the attorney he sought to have removed.  Cox's claim is that the failure to hold a hearing on his motion was itself a constitutional violation for which he is entitled to relief.

Cox is mistaken in claiming he had a constitutional right to the hearing he did not receive.  The Sixth Amendment guarantees a criminal defendant the right to effective assistance of counsel at trial, but there is no right to counsel of choice or to change counsel at will.  Furthermore, there is no constitutional right to a hearing on a *pro se* motion to change counsel.  Cox asserts "[t]he United States Supreme Court has held that once a request for substitute counsel has occurred, inquiry is required." (Traverse, Doc. No. 17, PageID 1087), citing *United States v. Robinson,* 973 F.2d 712, 716 (9th Cir. 1990); and *United States v. Torres-Rodriquez,* 930 F.2d 1375 (9th Cir. 1991).  The case which is reported at 973 F.2d 712 is *Southeast Resource Recovery Facility v. Montenay Intl. Corp.*, and not a criminal case at all.  A criminal case captioned *United States v. Robinson,* was decided by the Ninth Circuit in 1990 and reported at 913 F.2d 712, but it does not stand for the proposition for which Cox cites it.  Another case captioned *United States v. Robinson* was decided by the Ninth Circuit in 1990 and reported at 1990 U.S. App. LEXIS 22402, but it also does not hold there is an absolute right to a hearing and in fact held:

> Our court has consistently upheld the denial of a motion for substitution when the request was made on the eve of trial. *See, e.g., United States v. McClendon,* 782 F.2d 785, 789 (9th Cir. 1986); *United States v. Rogers,* 769 F.2d 1418, 1423-24 (9th Cir. 1985); *United States v. Altamirano,* 633 F.2d 147, 152 & n.4 (9th

11

Cir. 1980), *cert. denied,* 454 U.S. 839 (1981); *United States v. Michelson,* 559 F.2d 567, 572 (9th Cir. 1977).

*Id.* at *1-2.  The other cited case from the Ninth Circuit, *United States v. Torres-Rodriquez*, 930 F.2d 1375 (1991), holds that a conviction will be reversed for denial of substitution of counsel only if a defendant shows an abuse of discretion in applying three governing factors.  It does not hold there is an absolute constitutional right to a hearing on a *pro se* motion to substitute.

Finally, even if the cited Ninth Circuit cases had found an absolute right to such a hearing, that would not allow Cox to prevail.  Habeas corpus may be granted only if a petitioner can show violation of a constitutional right clearly established by holdings of the United States Supreme Court, not by the circuit courts of appeals.  *Terry Williams v. Taylor*, 529 U.S. 362, 412 (2000).  *Taylor v. Withrow*, 288 F.3d 846, 850 (6th Cir.2002) (quoting 28 U.S.C. § 2254(d)).

The First Ground for Relief is without merit and should be dismissed with prejudice.


**Ground Two:  Insufficient Evidence to Support Conviction**


In his Second Ground for Relief, Cox argues that there was insufficient evidence presented to support his conviction on any of Counts 1, 2, 3, or 4.  The Warden asserts this Ground for Relief is procedurally defaulted on the same basis as the First Ground for Relief, but the Magistrate Judge rejects that defense on the same analysis as is given above on Ground One.


**Count I**

Respecting Count I of the indictment, Cox asserted on direct appeal that the conviction

was not supported by sufficient evidence and also was against the manifest weight of the evidence. In rejecting these two Assignments of Error, Judge Donovan wrote:

> [*P34] "THERE WAS INSUFFICIENT EVIDENCE TO SUPPORT THE FINDING BY THE JURY OF GUILT AS TO COUNT I, CONSPIRACY TO TRAFFICKING IN COCAINE IN AN AMOUNT EQUAL TO OR EXCEEDING 10 GRAMS BUT LESS THAN 25 GRAMS, IN THE VICINITY OF A JUVENILE."

> [*P35] "THE FINDING BY THE JURY OF GUILT AS TO COUNT I, CONSPIRACY TO TRAFFICKING IN COCAINE WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

> [*P36] In his second assignment, Cox argues that the evidence adduced at trial was insufficient to sustain a conviction for conspiracy to commit trafficking in crack cocaine (at least ten grams but less than twenty-five) in the vicinity of a juvenile, in violation of R.C. 2923.01(A)(2) and 2925.03(A)(1). Additionally, Cox asserts that his conviction for said offense was against the manifest weight of the evidence.

> [*P37] "A challenge to the sufficiency of the evidence differs from a challenge to the manifest weight of the evidence." *State v. McKnight*, 107 Ohio St. 3d 101, 112, 2005 Ohio 6046, 837 N.E.2d 315. "In reviewing a claim of insufficient evidence, '[t]he relevant inquiry is whether, after reviewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.' (Internal citations omitted). A claim that a jury verdict is against the manifest weight of the evidence involves a different test. 'The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.'" *Id.*

> [*P38] The credibility of the witnesses and the weight to be given to their testimony are matters for the trier of facts to resolve. *State v. DeHass*, 10 Ohio St.2d 230, 231, 227 N.E.2d 212 (1967).

13

"Because the factfinder * * * has the opportunity to see and hear the witnesses, the cautious exercise of the discretionary power of a court of appeals to find that a judgment is against the manifest weight of the evidence requires that substantial deference be extended to the factfinder's determinations of credibility. The decision whether, and to what extent, to credit the testimony of particular witnesses is within the peculiar competence of the factfinder, who has seen and heard the witness." *State v. Lawson*, 2d Dist. Montgomery No. 16288, 1997 Ohio App. LEXIS 3709, 1997 WL 476684 (Aug. 22, 1997).

[**P39**] This court will not substitute its judgment for that of the trier of facts on the issue of witness credibility unless it is patently apparent that the trier of fact lost its way in arriving at its verdict. *State v. Bradley*, 2d Dist. Champaign No. 97-CA-03, 1997 Ohio App. LEXIS 4873, 1997 WL 691510 (Oct. 24, 1997).

[**P40**] "Conspiracy" is defined in R.C. 2923.01(A)(2) in pertinent part:

(A) No person, with purpose to commit or to promote or facilitate the commission of *** a felony drug trafficking *** offense *** shall *** with another person or persons, plan or aid in planning the commission of any of the specified offenses.

(B) No person shall be convicted of conspiracy unless a substantial overt act in furtherance of the conspiracy is alleged and proved to have been done by the accused or a person with whom the accused conspired, subsequent to the accused's entrance into the conspiracy. For the purposes of this section, an overt act is substantial when it is of a character that manifests a purpose on the part of the actor that the object of the conspiracy should be completed.

[**P41**] R.C. 2925.03(A)(1) defines trafficking in drugs and states as follows:

(A) No person shall knowingly do any of the following:

(1) Sell or offer to sell a controlled substance.

***

(C)(4) If the drug involved in the violation is cocaine or a

14

compound, mixture, preparation, or substance containing cocaine, whoever violates division (A) of this section is guilty of trafficking in cocaine. The penalty for the offense shall be determined as follows:

\*\*\*

(e) \*\*\* if the amount of the drug involved equals or exceeds ten grams but is less than twenty-five grams of crack cocaine, trafficking in cocaine is a felony of the second degree \*\*\*. If the amount of the drug involved is within one of those ranges and if the offense was committed \*\*\* in the vicinity of a juvenile, trafficking in cocaine is a felony of the first degree \*\*\*.

[*P42] Lastly, "an offense is 'committed in the vicinity of a juvenile' if the offender commits the offense within one hundred feet of a juvenile or within the view of a juvenile, regardless of whether the offender knows the age of the juvenile, whether the offender knows the offense is being committed within one hundred feet of or within view of the juvenile, or whether the juvenile actually views the commission of the offense."

[*P43] The evidence adduced at trial established all of the elements necessary to sustain Cox's conviction for conspiracy to commit trafficking in crack cocaine (at least ten grams but less than twenty-five) in the vicinity of a juvenile, in violation of R.C. 2923.01(A)(2) and 2925.03(A)(1). Initially, we note that both Younker and Rodriguez testified that Younker's two year old son was in the backseat of the vehicle where the drug transaction took place. Rodriguez testified that Younker informed her that Cox had crack cocaine for sale.

[*P44] Younker testified that she explained to Cox what Rodriguez wanted, and Cox indicated to Younker that he would provide that amount prior to the sale. Younker testified that Cox stated that while he had a portion of the crack cocaine in his possession, he would have to get the rest from his brother, Barnett. If Younker's testimony was deemed credible, then a jury could clearly find that a conspiracy clearly existed between Cox, Younker, and Barnett to facilitate and commit the sale of at least ten but not [sic] less than twenty-five grams of crack cocaine.

[*P45] Younker further testified that while they were on the way to the location of the drug transaction, Cox removed a baggie of

15

crack cocaine from his pocket and handed it to his brother, Barnett, in the back seat of the vehicle. The evidence further established that Cox was present in the vehicle while the sale of the crack cocaine took place. Once the sale to Rodriguez was completed for $700.00, Cox distributed the drug money to Younker and Barnett, keeping $100.00 for himself. We also note that Det. Miller testified that on October 1, 2009, Cox stated that he was the "same dude you got it from the last time." Det. Miller testified that he understood this statement to mean that Cox was the individual who sold the crack cocaine to Rodriguez on September 21, 2009, when Det. Penrod was posing as Det. Miller's girlfriend to facilitate the drug transaction. Thus, a review of the record convinces us that the State's evidence, taken in its entirety, was sufficient to sustain Cox's conviction for conspiracy to commit trafficking in crack cocaine (at least ten grams but less than twenty-five) in the vicinity of a juvenile.

*State v. Cox, supra*, ¶¶ 34-45.

In cases such as Petitioner's challenging the sufficiency of the evidence and filed after enactment of the Antiterrorism and Effective Death Penalty Act of 1996 (Pub. L. No 104-132, 110 Stat. 1214)(the "AEDPA"), two levels of deference to state decisions are required:

In an appeal from a denial of habeas relief, in which a petitioner challenges the constitutional sufficiency of the evidence used to convict him, we are thus bound by two layers of deference to groups who might view facts differently than we would. First, as in all sufficiency-of-the-evidence challenges, we must determine whether, viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). In doing so, we do not reweigh the evidence, re-evaluate the credibility of witnesses, or substitute our judgment for that of the jury. See *United States v. Hilliard*, 11 F.3d 618, 620 (6th Cir. 1993). Thus, even though we might have not voted to convict a defendant had we participated in jury deliberations, we must uphold the jury verdict if any rational trier of fact could have found the defendant guilty after resolving all disputes in favor of the prosecution. Second, even were we to conclude that a rational trier of fact could not have found a

> petitioner guilty beyond a reasonable doubt, on habeas review, we
> must still defer to the state appellate court's sufficiency
> determination as long as it is not unreasonable. See 28 U.S.C. §
> 2254(d)(2).

*Brown v. Konteh,* 567 F.3d 191, 205 (6th Cir. 2009).  In a sufficiency of the evidence habeas

corpus case, deference should be given to the trier-of-fact's verdict under *Jackson v. Virginia* and

then to the appellate court's consideration of that verdict, as commanded by AEDPA. *Tucker v.*

*Palmer*, 541 F.3d 652 (6th Cir. 2008).

> We have made clear that *Jackson* claims face a high bar in federal
> habeas proceedings because they are subject to two layers of
> judicial deference. First, on direct appeal, "it is the responsibility of
> the jury -- not the court -- to decide what conclusions should be
> drawn from evidence admitted at trial. A reviewing court may set
> aside the jury's verdict on the ground of insufficient evidence only
> if no rational trier of fact could have agreed with the jury."
> *Cavazos v. Smith,* 565 U. S. 1, ___, 132 S. Ct. 2, 181 L. Ed. 2d
> 311, 313 (2011) (*per curiam*). And second, on habeas review, "a
> federal court may not overturn a state court decision rejecting a
> sufficiency of the evidence challenge simply because the federal
> court disagrees with the state court. The federal court instead may
> do so only if the state court decision was 'objectively
> unreasonable.'" *Ibid.* (quoting *Renico v. Lett,* 559 U. S. ___, ___,
> 130 S. Ct. 1855, 176 L. Ed. 2d 678 (2010)).

*Coleman v. Johnson*, 566 U.S. ___, ___, 132 S. Ct. 2060, 2062 (2012)(*per curiam)*.

With respect to his conviction on Count I, Cox admits that there is damaging testimony

from both Younkers and Rodriquez concerning his conduct on September 21, 2009.  But, he

says, they were seeking "personal gain in their testimony regarding these transaction to avoid

their own criminal charges.  Therefore, their testimony deserves grave suspicion."  (Petition,

Doc. No. 3, PageID 114.)  But whether any particular piece of testimony is to be believed or not

is a matter for the jury, particularly because any motives these witnesses had to shade the truth

was available to be pointed out to the jury.

Cox claims that there was no two-year-old child present because the "audio recordings contain no sound of a child." *Id.* at PageID 115.  There is, however, eyewitness testimony from two different people that a two-year-old child was present.  Any argument that this eyewitness testimony should be discounted because of the audio recording should have been made to the jury.  It is certainly not the case that no rational juror could have believed a child was present when two eyewitnesses said there was a child.

Cox relies on the Ohio statute which requires proof of conspiracy by more than the testimony of a co-conspirator, Ohio Revised Code § 2923.01(H)(1).  But he was not charged with conspiring to have a two-year-old present, but rather with conspiring to traffic in drugs.

The decision of the Second District Court of Appeals that the conviction on Count I is supported by sufficient evidence is not an objectively unreasonable application of *Jackson v. Virginia, supra.*


**Count II**

Cox also claimed on direct appeal that there was insufficient evidence to support his conviction on Count II of the Indictment.  The Court of Appeals decided this claim as follows:

> **[\*P49]** "THERE WAS INSUFFICIENT EVIDENCE TO SUPPORT THE FINDING BY THE JURY OF GUILT AS TO COUNT II, COMPLICITY TO TRAFFICKING IN COCAINE."
>
> **[\*P50]** THE FINDING BY THE JURY AS TO COUNT II, COMPLICITY TO TRAFFICKING IN COCAINE WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
>
> **[\*P51]** In his fourth assignment of error, Cox asserts that the evidence adduced at trial was insufficient to sustain a conviction

18

for complicity to trafficking in crack cocaine (at least ten grams but less than twenty-five grams) in the vicinity of a juvenile, in violation of R.C. 2925.03(A)(1). Additionally, Cox asserts that his conviction for said offense was against the manifest weight of the evidence.

[*P52] "Complicity" is defined in R.C. 2923.03 in relevant part: (A) No person, acting with the kind of culpability required for the commission of an offense, shall do any of the following:

(2) Aid or abet another in committing the offense.

[*P53] The drug trafficking statute, R.C. 2925.03, provides in pertinent part:
 (A) No person shall knowingly do any of the following:

(1) Sell or offer to sell a controlled substance.

[*P54] A person aids and abets the commission of a crime when he advises, supports, assists, encourages or cooperates with the principal offender, and shares the criminal intent of the principal offender. *State v. Johnson*, 93 Ohio St.3d 240, 2001 Ohio 1336, 754 N.E.2d 796. "Such intent may be inferred from the facts and circumstances surrounding the crime." *State v. Whitfield*, 2d Dist. Montgomery No. 22432, 2009 Ohio 293.

[*P55] Viewing the evidence in the light most favorable to the State, we find sufficient evidence to support Cox's conviction for complicity to trafficking in crack cocaine. As previously stated, Younker affirmatively testified that Cox was the source of the crack cocaine sold to Rodriguez on September 21, 2009. Younker also testified that while she and Barnett were paid for their role in the transaction, Cox kept $100.00 of the proceeds from the sale of the half-ounce of crack cocaine. Younker's testimony in this regard establishes that Cox assisted, facilitated, and/or promoted the commission of trafficking in crack cocaine. Without Cox's direct involvement in the drug transaction, the deal could not have been completed.

[*P56] Moreover, although Cox attempted to discredit Younker's testimony as fabricated and self-serving, the jury did not lose its way simply because it chose to believe her testimony regarding

Cox's involvement in the transaction. Accordingly, Cox's conviction for complicity to trafficking in crack cocaine in Count II is not against the manifest weight of the evidence.

**[\*P57]** Cox's fourth and fifth assignments of error are overruled.

*State v. Cox*, 2012-Ohio-2100, 2012 Ohio App. LEXIS 1839 ¶¶ 49-57(2nd Dist. 2012).

Cox argues the evidence is insufficient to support a conviction for complicity because he was just a passenger in the car where the dug transaction took place between the confidential informant and the back seat passenger.  Cox claims he was just sitting there silently (Petition, Doc. No. 3, PageID 117).  But this account ignores the testimony presented to the jury from Younkers and Rodriquez about what Cox's role was in the transaction.  In other words, the premise of Cox's claim on Count II is that the testimony of these two witnesses should not have been believed.  That is an argument directed to the jury.  Obviously the jury did believe these witnesses and Cox points to no facts which show that no rational juror could possibly have believed them.

The decision of the Second District Court of Appeals that the conviction on Count II is supported by sufficient evidence is not an objectively unreasonable application of *Jackson v. Virginia, supra.*

## Count III

Cox argues there was insufficient evidence to convict him on Count III for possession of the crack cocaine because he was never in actual or constructive possession of it (Petition, Doc. No. 3, PageID 117-119).  This claim was also raised on direct appeal and decided as follows:

[*P59] "THERE WAS INSUFFICIENT EVIDENCE TO SUPPORT THE FINDING BY THE JURY OF GUILT AS TO COUNT III, POSSESSION OF COCAINE."

[*P60] "THE FINDING BY THE JURY OF GUILT AS TO COUNT III, POSSESSION OF COCAINE, WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

[*P61] In his sixth assignment of error, Cox argues that the evidence adduced at trial was insufficient to sustain a conviction for possession of crack cocaine (at least ten grams but less than twenty-five grams), in violation of R.C. 2925.11(A). Additionally, Cox asserts that his conviction for said offense was against the manifest weight of the evidence.

[*P62] To prove a violation of R.C. 2925.11(A), the State was required to prove beyond a reasonable doubt that Cox knowingly possessed a controlled substance, namely the crack cocaine sold to Rodriguez during the controlled purchase on September 21, 2009.

[*P63] Knowingly is defined in R.C. 2901.22(B):

A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist.

[*P64] "Possession" is defined in R.C. 2925.01(K):

Possess or possession means having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found.

[*P65] Possession of a drug may be either actual physical possession or constructive possession. *State v. Butler*, 42 Ohio St.3d 174, 538 N.E.2d 98 (1989). A person has constructive possession of an item when he is conscious of the presence of the object and able to exercise dominion and control over that item, even if it is not within his immediate physical possession. *State v. Hankerson*, 70 Ohio St.2d 87, 434 N.E.2d 1362 (1982); *State v. Wolery*, 46 Ohio St.2d 316, 348 N.E.2d 351 (1976).

21

[*P66] Readily usable drugs found in very close proximity to a person may constitute circumstantial evidence sufficient to support a finding that the person constructively possessed those drugs. *State v. Miller*, 2d Dist. Montgomery No. 19174, 2002 Ohio 4197. In determining whether a defendant knowingly possessed a controlled substance, it is necessary to examine the totality of the relevant facts and circumstances. *State v. Teamer*, 82 Ohio St.3d 490, 492, 1998 Ohio 193, 696 N.E.2d 1049 (1998); *State v. Pounds*, 2d Dist. Montgomery No. 21257, 2006 Ohio 3040. The State may prove constructive possession solely through circumstantial evidence. *State v. Barnett*, 2d Dist. Montgomery No. 19185, 2002 Ohio 4961. Circumstantial evidence and direct evidence have the same probative value. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991).

[*P67] Younker's testimony was that on September 21, 2009, Cox handed the baggie of crack cocaine to Barnett immediately prior to their arrival at the McDonalds parking lot where the transaction was conducted. Moreover, after she returned from the vehicle in which Cox was present, Rodriguez had crack that she had just purchased therein. Det. Miller also testified that on October 1, 2009, Cox stated that he was the "same dude you got it from the last time," meaning the source of the crack cocaine from the controlled purchase on September 21, 2009. Viewed in a light most favorable to the State, this evidence establishes that Cox knowingly possessed the crack cocaine at issue in Count III. Additionally, we find that Cox's conviction for possession of crack cocaine in Count III was not against the manifest weight of the evidence.

[*P68] Cox's sixth and seventh assignments of error are overruled.

*State v. Cox, supra* ¶¶ 58-68.

Cox's argument on this sub-claim focuses on Ohio case law discussing various ways in which a person may be found in constructive possession of drugs in contrast to the facts of his own case. For example, he says "In contrast to Caldwell [State v. Caldwell, 2011 WL 5022896 (Ohio App. 5th Dist. 2011)], I was not in possession, actual or constructive, of the subject cocaine." (Petition, Doc. No. 3, PageID 118).

Cox points to no place in the record where he testified he was not in possession of the cocaine.  The court of appeals, however, found that Younkers testified Cox handed the baggie of cocaine to Barnett "immediately prior to their arrival at the McDonalds parking lot."  *State v. Cox, supra*, ¶ 67.  Perhaps if Cox had testified, the jury would have believed him,  but he did not. Here, as with the prior sub-claims, the jury was entitled to believe Younkers and that testimony alone is enough to establish possession.

The decision of the Second District Court of Appeals that the conviction on Count III is supported by sufficient evidence is not an objectively unreasonable application of *Jackson v. Virginia, supra.*

**Count IV**

Cox argues that there was insufficient evidence to convict him of the charge in Count IV of the Indictment, trafficking in powder cocaine.  This claim was presented on direct appeal and decided by the appellate court as follows:

> [**\*P70**] "THERE WAS INSUFFICIENT EVIDENCE TO SUPPORT THE FINDING BY THE JURY OF GUILT AS TO COUNT IV, TRAFFICKING IN COCAINE."
>
> [**\*P71**] "THE FINDING BY THE JURY OF GUILT AS TO COUNT IV, TRAFFICKING IN COCAINE, WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
>
> [**\*P72**] In his eighth assignment, Cox asserts that the evidence adduced at trial was insufficient to sustain a conviction for one count of trafficking in cocaine (at least ten grams but less than one hundred grams), in violation of R.C. 2925.03(A)(1). Cox also argues that his conviction for said offense was against the manifest weight of the evidence. Specifically, Cox contends that the State

23

failed to adduce sufficient evidence to prove that he offered to sell powder cocaine to Det. Miller. Cox also asserts that Det. Miller could not have been sure that the individual to whom he was speaking was Cox.

[*P73] Det. Miller testified that Cox initially offered to sell him ten grams of powder cocaine for $700.00. Det. Miller also testified that Cox's phone calls on October 1, 2009, came from Younker's phone number, and that the caller identified himself as "Twin," Cox's nickname. We note that at trial, Younker identified Cox's voice as the one on the recordings from the October 1, 2009, aborted drug transaction. After Det. Miller terminated the deal out of fear for his personal safety, Cox became relatively agitated, stating that he really wanted the drug sale to occur, even going so far as to lower the price while increasing the quantity of the cocaine he intended to sell to Det. Miller.

[*P74] Ohio Rule of Evidence 901(B)(5) states that authentication or identification of a voice may be done "by opinion based upon hearing the voice at any time under circumstances connecting it with the alleged speaker." On October 6, 2009, Det. Miller met with Cox in-person and spoke with him during that particular drug transaction. As a result, Det. Miller would be able to state his opinion on voice identification, thus identifying Cox's voice as the one on the recordings from the aborted controlled purchase on October 1, 2009. Viewed in a light most favorable to the State, the evidence adduced was sufficient to sustain Cox's conviction for trafficking in cocaine based on his offer to sell Det. Miller approximately nine grams of powder cocaine on October 1, 2009.

[*P75] Moreover, although Cox attempted to undermine Det. Miller's testimony, the jury did not lose its way simply because it chose to believe his testimony regarding Cox's offer to sell nine grams of powder cocaine, as well as his identification of Cox as the individual speaking during the phone calls on October 1, 2009. Accordingly, Cox's conviction for trafficking in cocaine in Count IV is not against the manifest weight of the evidence.

[*P76] Cox's eighth and ninth assignments of error are overruled.

*State v. Cox, supra*, ¶¶ 70-76.

Cox's argument is that there are various arguable inconsistencies in Detective Miller's

24

testimony and there is no scientific evidence, such as a forensic voice analysis, to corroborate Miller's identification of his voice.  Here, again, Cox misapplies the *Jackson v. Virginia* standard.  The question is not whether the State might have had more evidence or more persuasive evidence.  Rather the standard requires that there be competent believable evidence on each element of the crime, which there was on the trafficking offense.

The decision of the Second District Court of Appeals that the conviction on Count IV is supported by sufficient evidence is not an objectively unreasonable application of *Jackson v. Virginia, supra.*

In sum, as found by the Second District Court of Appeals, the state presented competent credible evidence on each element of the offenses charged in Counts one though four of the Indictment and applied the correct legal standard.  Ground Two for Relief should therefore be dismissed with prejudice.


**Ground Three:  Ineffective Assistance of Trial Counsel**


In his Third Ground for Relief, Cox argues he received ineffective assistance of trial counsel when his trial attorney failed to properly object to the admission of the audio tape as trial exhibit #1.  The Warden asserts this Ground for Relief is procedurally defaulted on the same basis as the First Ground for Relief, but the Magistrate Judge rejects that defense on the same analysis as is given above on Ground One.

The governing standard for ineffective assistance of counsel is found in *Strickland v. Washington*, 466 U.S. 668 (1984):

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components.  First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.  Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

466 U.S. at 687.  In other words, to establish ineffective assistance, a defendant must show both

deficient performance and prejudice.  *Berghuis v. Thompkins,* 560 U.S. 370, ___, 130 S.Ct. 2250,

2264 (2010), *citing Knowles v. Mirzayance,* 556 U.S.111 (2009).

With respect to the first prong of the *Strickland* test, the Supreme Court has commanded:

> Judicial scrutiny of counsel's performance must be highly deferential. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

466 U.S. at 689.

As to the second prong, the Supreme Court held:

> The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to overcome confidence in the outcome.466 U.S. at 694. *See also Darden v. Wainwright*, 477 U.S. 168, 184 (1986), *citing Strickland, supra.*; *Wong v. Money,* 142 F.3d 313, 319 (6th Cir. 1998), *citing Strickland, supra*; *Blackburn v. Foltz,* 828 F.2d 1177, 1180 (6th Cir. 1987), *quoting Strickland,* 466 U.S. at 687. "The likelihood of a different result must be substantial, not just conceivable." *Storey v. Vasbinder*, 657 F.3d 372, 379 (6th Cir. 2011), *cert. denied,* ___ U.S. ___, 132 S.Ct. 1760 (2012), *quoting Harrington v. Richter*, 562 U.S. ___, ___, 131 S. Ct. 770, 792 (2011).

Counsel's performance is measured by "prevailing professional norms" at the time of the alleged errors. *Rickman v. Bell*, 131 F.3d 1150, 1154 (6th Cir. 1997).

Cox raised this Ground for Relief on direct appeal and the court of appeals decided it as follows:

> **[*P87]** Cox's eleventh assignment of error is as follows:
>
> **[*P88]** "THE DEFENDANT RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL IN FAILURE [sic] TO

27

PROPERLY OBJECT TO THE ADMISSION OF THE AUDIO TAPE AS TRIAL EXHIBIT #1."

[*P89] In his eleventh assignment, Cox argues that he received ineffective assistance when his counsel failed to object to the admission of State's Exhibit #1, which contained recordings that were not admitted as testimony, nor authenticated by the State.

[*P90] "We review the alleged instances of ineffective assistance of trial counsel under the two prong analysis set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and adopted by the Supreme Court of Ohio in *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373, * * * . Pursuant to those cases, trial counsel is entitled to a strong presumption that his or her conduct falls within the wide range of reasonable assistance. *Strickland*, 466 U.S. at 688. To reverse a conviction based on ineffective assistance of counsel, it must be demonstrated that trial counsel's conduct fell below an objective standard of reasonableness and that his errors were serious enough to create a reasonable probability that, but for the errors, the result of the trial would have been different. *Id*. Hindsight is not permitted to distort the assessment of what was reasonable in light of counsel's perspective at the time, and a debatable decision concerning trial strategy cannot form the basis of a finding of ineffective assistance of counsel." (Internal citation omitted). *State v. Mitchell*, 2d Dist. Montgomery No. 21957, 2008 Ohio 493, ¶ 31.

[*P91] An appellant is not deprived of effective assistance of counsel when counsel chooses, for strategic reasons, not to pursue every possible trial tactic. *State v. Brown*, 38 Ohio St.3d 305, 319, 528 N.E.2d 523 (1988). The test for a claim of ineffective assistance of counsel is not whether counsel pursued every possible defense; the test is whether the defense chosen was objectively reasonable. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L. Ed. 2d 674. A reviewing court may not second-guess decisions of counsel which can be considered matters of trial strategy. *State v. Smith*, 17 Ohio St.3d 98, 17 Ohio B. 219, 477 N.E.2d 1128 (1985). Debatable [**35] strategic and tactical decisions may not form the basis of a claim for ineffective assistance of counsel, even if, in hindsight, it looks as if a better strategy had been available. *State v. Cook*, 65 Ohio St.3d 516, 524, 605 N.E.2d 70 (1992).

[*P92] After a thorough review of the record, we conclude that Cox has failed to establish that he was prejudiced by his counsel's failure to object to the admission of State's Exhibit #1. Initially we

28

note that the admissible portion of the evidence on the audiotape comprising State's Exhibit #1 was played for the jury during trial. Additionally, while it is true that defense counsel did not object to admission of State's Exhibit #1, the record indicates that defense counsel entered into an agreement with the State whereby the tape would be admitted into evidence, but the bailiff would be instructed not to permit the jury to hear the portion of the tape which was inadmissible. On appeal, Cox does not argue that State's Exhibit #1 was inadmissible in its entirety. Rather, Cox contends only a portion of the tape was inadmissible, and it appears from the record that steps were taken to insure a portion of the tape was kept from the jury pursuant to the agreement between the parties. Cox does not argue that he was in any way prejudiced by the parties' agreement to instruct the bailiff not to allow the jury to hear the inadmissible portion of the tape, nor does he suggest that there was a breach of this directive. Thus, Cox has failed to establish that his counsel's performance was deficient. Reviewing courts must indulge in a strong presumption that counsel's conduct was not improper, and reject post-trial scrutiny of an act or omission that was a matter of trial tactics merely because it failed to avoid a conviction." *State v. Reid*, 2d Dist. Montgomery No. 23409, 2010 Ohio 1686.

[**P93**] Cox's eleventh assignment of error is overruled.

*State v. Cox, supra*, ¶¶ 87-93.

In support of this Ground for Relief, Cox makes the following arguments:

In the current case, my counsel failed to object to the admission of Exhibit #1 which contained recordings that were not admitted as testimony and not authenticated by the state. Exhibit #1 was used in it's [sic] entirety to convict me on all charges and was the main evidence in the states [sic] case. The admissions hearing at trial the prosecutor made it part of the record that a part of Exhibit #1 was deemed inadmissible. The defense went into an agreement with the state, without my permission, to allow the bailiff to fast forward the tape past the harmful portions. This was a critical error made by the defense attorney for several reasons: 1) The deal that was made to protect the jury , had been breached. The jury had already heard Exhibit #1 in it's [sic] entirety twice unredacted in open trial. 2) One of my convictions came solely from an audio tape from Exhibit #1. October 1, 2009, count four, in which I received [sic] 4 years for, there is no other evidence of this drug deal taking place. Besides an audio tape, Which is apart [sic] of Exhibit #1. Nor [sic]

> only was this the sole evidence of the October 1, 2009 charge, but
> Exhibit #1 was also used to link me from the October 1, 2 009
> deal, back to the September 21, 2009, deal. Had my attorney
> objected to the admission of Exhibit #1 at transcript page 375 and
> 376. The trial judge stated that: If you want an exhibit admitted, it
> needs to be clean because----I guess what I am saying is, if you go
> on and admit an exhibit take the offending portion out." The judge
> goes on at transcript page 376 at 6-11 stating: That absent of an
> objection at this point we are going to forward with it and we will
> do it the way you two agreed to do that, but candidly, if the defense
> had objected to the admission of that I probably would have
> granted it for that reason. Even though the trial attorney didn't
> object, the court was aware of the problem and would have
> excluded the evidence.  Therefore the court should have Sua
> Sponte excluded Exhibit #1 the audio tapes, and abused it's[sic]
> discretion by knowingly allowing prejudicial evidence to be heard
> by the jury.

(Petition, Doc. No. 3, PageID 123-24.)

The Second District found that "the admissible portion of the evidence on the audiotape
comprising State's Exhibit #1 was played for the jury during trial."  *State v. Cox, supra*, ¶ 92.
Cox claims this "fact finding determination in this aspect was wrong." (Traverse, Doc. No. 17,
PageID 1092.)

Under § 2254(e)(1), a state court's findings of fact are presumed correct and may be
rebutted by the petitioner only by clear and convincing evidence to the contrary.  *Cornwell v.
Bradshaw*, 559 F.3d 398, 405 (6th Cir. 2009); *Mitchell v. Mason,* 325 F.3d 732, 737-38 (6th Cir.
2003); *Warren v. Smith,* 161 F.3d 358, 360-61 (6th Cir. 1998).  This statutory presumption of
correctness extends to factual findings made by state appellate courts on the basis of their review
of trial court records. *Girts v. Yanai,* 501 F.3d 743, 749 (6th Cir. 2007); *Mason v. Mitchell,* 320
F.3d 604, 614 (6th Cir. 2003); *Brumley v. Wingard,* 269 F.3d 629, 637 (6th Cir. 2001), *citing
Sumner v. Mata*, 449 U.S. 539, 546-47 (1981).

To rebut the court of appeals' finding, Cox argues "my trial transcripts are incomplete,

with regards [to] State's Trial Exhibit #1. State's Exhibit #1 was not transcribed in real time with my trial. There is no record of what was exactly said in the presence of my jury." (Traverse, Doc. No. 17, PageID 1092.) Cox then directs this Court's attention to the trial transcript, citing twenty-eight different pages.[2] The first such place is at PageID 581 where the transcript reads "(WHEREUPON, State's Exhibit 1A played for the Jury.)" The next such place is at PageID 587 where the transcript reads "(WHEREUPON, State's Exhibit No. 1 played for the Jury.)" Just before this, the following colloquy is recorded:

> MR. HAYES [the prosecutor]: Your Honor, at this point I 'm going to play that portion of the audio recording. That will be marked as State's Exhibit No. 1B.
>
> 'IHE COURI': Is this all on the same disk?
>
> MR. HAYES: It is. We can just refer to it as Exhibit 1?
>
> 'IHE COURI': Yeah. Are you comfortable with that?
>
> MR. HAYES: Yeah. We're only going to have one Exhibit.
>
> 'IHE COURI': If you want with Counsel and the Jury to break it down into parts, you are entitled to do that, but I just need Exhibit 1 for the disk.
>
> MR. HAYES: Fair enough. I think if the Court will indulge me, I will continue to break it down.

*Id.*

The third instance cited by Cox is at PageID 697 and reads "(WHEREUPON, State's Exhibit No. 1 played for the Jury) just after Mr. Hayes says he is about to play a portion of Exhibit 1. Exactly the same language appears at PageID 604, 607, 608, and 612. It is apparent

---

[2] Cox cites to pages of the transcript as originally numbered by the court reporter (Traverse, Doc. No. 17, PageID 1093). In the Order for Answer, the Court required the Warden to file the record electronically, causing the Court's CM/ECF filing system to affix a unique PageID number to each page of the record and ordered "All papers filed in the case thereafter, by either party, including the answer and exhibit index, shall include record references to the PageID number." (Doc. No. 2, PageID 84). Cox has ignored this Order.

that the court reporter who made the stenotype record of the trial (1) did not transcribe the portions of State's Exhibit 1 as they were played and (2) made the same record notation each time a portion of the recording was played.

Mr. Cox asks this Court to infer from what was not transcribed that what was played for the jury included inadmissible evidence. The Magistrate Judge concludes, to the contrary, that the court of appeals' finding is fully supported by the record. First, it is clear from the context of each of these excerpts that Judge Wolaver and the two attorneys were very attentive to what was properly admissible. Secondly, the law is that regularity of the record is to be presumed. *Chinn v. Warden*, 2013 U.S. Dist. LEXIS 91248 at *86, *citing Johnson v. Zerbst*, 304 U.S. 458, 468 (1938)(regularity of a state court judgment is to be presumed.) It is customary in most courts not to have the court reporter transcribe audio recordings, so the fact that this court reporter followed that custom in this case does not support an inference that something inadmissible was heard by the jury. Finally, there is no evidence – only Cox's assertion – that the jury heard the entire recording.

At the time the case was submitted to the jury, an agreement was reached between counsel that the bailiff would control which portions of the audio recording the jury heard. Cox claims he did not concur in that agreement, but his lack of concurrence is immaterial: the proper handling of evidence by a deliberating jury is a matter that a defense lawyer can decide himself without the concurrence of his client. An attorney undoubtedly has a duty to consult with the client regarding "important decisions," including questions of overarching defense strategy. *Florida v. Nixon*, 543 U.S. 175 (2004), *citing Strickland*, 466 U.S. at 688. That obligation does not require counsel to obtain defendant's consent to every tactical decision. *Id. citing Taylor v. Illinois*, 484 U.S. 400, 417-418 (1988), holding that an attorney has authority to manage most

aspects of the defense without obtaining his client's approval.

At the end of his argument, Cox asserts the trial judge should have *sua sponte* excluded Exhibit 1 and abused his discretion in not doing so (Petition, Doc. No. 3, PageID 124).  That claim is not properly before this Court because it was not presented at all to the Ohio courts. Cox's only claim on appeal as to State's Exhibit 1 was ineffective assistance of trial counsel for failing to object to the exhibit.  Any claim Judge Wolaver should have excluded the recording *sua sponte* is procedurally defaulted by failure to present it in the Ohio courts.

Cox makes much of Judge Wolaver's statement that if an objection had been made, he would have excluded Exhibit 1.  From the context of that statement, it is clear the judge believed the State should have created a "clean" copy of the exhibit for submission to the jury and he has doubts about the agreement to have the bailiff monitor what is played.  Those concerns are certainly understandable, but the fact that the judge went ahead with the procedure counsel had agreed on does not prove the jury heard any inadmissible evidence.

Cox argues that "if I have not met my burden of proof that the jury heard the offending portions of State's Exhibit #1 I ask this Court to grant an evidentiary hearing to prove that the jury did in fact hear the offending portion of the tape in it's [sic] entirety, unredacted." (Traverse, Doc. No. 17, PageID 1095).  There are two conclusive objections to this request. First, Cox has not suggested how he would prove that fact:  he offers no evidence that there is any person prepared to testify to that fact.  Second, an evidentiary hearing on this point is prohibited by the Supreme Court's decision in *Cullen v. Pinholster,* 563 U.S. ___, 131 S.Ct. 1388 (2011), which requires that this Court decide whether the state court decision is objectively unreasonable on the basis of the record made in the state court.

The Second District's decision on this Ground for Relief is not an objectively

unreasonable application of *Strickland v. Washington*, *supra*, and its progeny.  Ground Three should therefore be dismissed with prejudice.

**Ground Four:  Ineffective Assistance of Appellate Counsel**

In his Fourth Ground for Relief, Cox claims he received ineffective assistance of appellate counsel in several respects.

The first sub-claim deals with appellate counsel's failure to timely notify Cox of the adverse decision of the Second District Court of Appeals.  The Court has accepted this claim insofar as it is offered to excuse procedural default of the first three Grounds for Relief.  The Court does not understand Cox to offer this as a stand-alone or substantive claim, i.e., a claim that he is entitled to be released from prison because of this failure of his attorney, but merely that he is entitled to have his first three Grounds for Relief considered on the merits, which this Court has done above.

Cox's substantive claim of ineffective assistance of appellate counsel is that his appellate attorney was ineffective for failing "to raise the meritorious issue's [sic] included in the Petitioner's Pro Se, state 26(B) Application."  (Petition Doc. No. 3, PageID 127.)

As with the first three Grounds for Relief, the Warden asserts Ground Four is barred by Cox's procedural default.  Because the Warden asserts a different basis for default, this defense requires a separate analysis for Ground Four.

Before a habeas petitioner can bring a claim of ineffective assistance of appellate counsel in federal court, he must first exhaust that claim by presenting it to the state courts.  In Ohio the exclusive way to present such a claim in a non-capital case is by filing an application to reopen

the direct appeal under Ohio R. App. P. 26(B). Cox filed such an Application November 5, 2012, but the court of appeals did not reach the merits because it found the Application was untimely. It held:

> On May 11, 2012 we issued an Opinion affirming the judgment of the trial court. *State v. Cox*, 2d Dist. Greene No. 2011 CA 19, 2012-Ohio-2100. From that decision, Cox has filed a Motion to Reopen his appeal.
>
> Cox's motion is not timely. App R 26(B) states that "[a]n application for reopening shall be filed in the Court of Appeals where the appeal was decided within ninety days from journalization of the appellate judgment unless the applicant shows good cause for filing at a later time." While Cox has demonstrated that he received a letter from his attorney at the Madison Correctional Institution on August 2, 2012, the letter dated July 30, 2012, from Cox's attorney mentions that our decision of May 11, 2012 was sent to Cox previously. Cox did not provide this court with mail logs from any date prior to August 2, 2012. It is Cox's duty to demonstrate good cause for the delayed filing, which the letter of July 30, 2012, and mail log from August 2, 2012, failed to establish. Even assuming *arguendo* that Cox first became aware of this court's judgment on the later date of August 2, 2012, his motion filed on November 5, 2012 is nevertheless untimely, because it was filed more than ninety days from August 2, 2012.

*State v. Cox,* Case No. 2011 CA 19 (Ohio App. 2d Dist. Feb. 25, 2013)(unreported, copy at Return of Writ, Doc. No. 8-1, PageID 450-52.)

Applying the analysis required by *Maupin v. Smith, supra,* Ohio has a relevant procedural rule, to wit, that a claim of ineffective assistance of appellate counsel must be filed within ninety days of judgment. Ohio App. R. 26(B). Cox did not file within the required time: the ninetieth day after May 11, 2012, is August 9, 2012. As shown in the above quotation, the Second District enforced that rule against Cox. In noncapital cases, the timeliness rule for filing a 26(B) application is an adequate and independent state ground of decision. *Parker v. Bagley,* 543 F.3d 859 (6th Cir. 2008); *Scuba v Brigano*, 527 F.3d 479, 488 (6th Cir. 2007)(distinguishing holding in

capital cases); *Monzo v. Edwards*,  281 F.3d 568 (6th Cir. 2002); *Tolliver v. Sheets*, 594 F.3d 900 (6th Cir. 2010), *citing Rideau v. Russell*, 2009 WL 2586439 (6th Cir. 2009).

Thus Cox's ineffective assistance of appellate counsel claims are procedurally defaulted unless he can show excusing cause and prejudice.  To attempt to do so, he again directs this Court's attention to the documents added to the record by his Motion to Expand the Record (Doc. No. 4).  He argues in that Motion

> my 26(B) application was late from the time I was aware because I had sent it to the wrong court.  But when it was sent back to me I still had 7 days left on my deadline.  My 26(B) was held or lost in Madison's mail room, so I didn't know it had been sent to the wrong court, which is also explained in detail in the accompanying affidavit.  I want to submit the log for the day I received my 26(B) back along with a post-marked envelope and the letter from the Clerk of Courts to show had my 26(B) not been held up or lost in the mail I would have been able to get it sent out and been timely.

(Motion, Doc. No. 4, PageID 139-40.)  Exhibit G to the Motion to Expand reads in its entirety:

> OCT 24, 2012
>
> 2011CA19
>
> THIS IS NOT A MONTGOMERY COUNTY APPEAL. WE CANNOT FILE THIS PAPERWORK.
> IT SHOULD BE FILED IN THE COUNTY WHERE YOUR APPEAL IS FILED.
>
> CLERK OF COURTS

*Id.*at PageID 156.

The legal mail log attached as Exhibit J shows Cox received this document from Gregory A. Brush on October 29, 2012. *Id.* at PageID 159.

There are several defects in this argument.  First of all, Ohio App. R. 26(B) does not toll the 90-day deadline for any period in which a defendant is not aware of the appellate decision.

36

The deadline runs from the date of journalization, not from the date when the appellant becomes aware of journalization.  Second, the Court of Appeals noted that, even assuming *arguendio* it was correct that Cox first learned of its decision on August 2, 2012,[3] he had taken more than ninety days from then to file his 26(B).  It noted that the burden of proof of good cause for delay was on Cox and he had not met it.  When he filed his Delayed Application to Reopen, he made no mention to the court of appeals of having sent the application to the wrong court or of any delay in his learning that Gregory Brush had refused his filing.  (See Return of Writ, Doc. No. 8, PageID 419-20.)  Nor did he offer any reason why he had waited more than sixty days from the date he received notice of the decision to even attempt to file a 26(B) application.

Excusing cause must be something external to the petitioner.  *Hartman v. Bagley,* 492 F.3d 347, 358 (6th Cir. 2007); *Murray v. Carrier*, 477 U.S. 478 (1986).   Waiting more than sixty days to attempt to file is not attributable to anyone other than Cox.  This case was tried before Judge Wolaver in the Greene County Common Pleas Court.  The Clerk of Courts for Greene County was then and is now Terri Mazur; the caption on the opinion reads "In the Court of Appeals for Greene County, Ohio."  (PageID 386.)  Gregory Brush was then and is now the Clerk of Courts for Montgomery County, Ohio, without any authority to file documents in the Court of Appeals for Greene County.  Sending the application to Mr. Brush rather than to Ms. Mazur was Cox's mistake, not attributable to anyone else.

In sum, Cox has not shown excusing cause for his procedural default in raising his ineffective assistance of appellate counsel claims.  Ground four should therefore be dismissed with prejudice.

---

[3] The court of appeals accepted Mr. Miller's assertion that he had sent the decision earlier; this Court has given Cox the benefit of the doubt on that point.

**Conclusion**

Based on the foregoing analysis, it is respectfully recommended that the Petition be dismissed with prejudice.  Because reasonable jurists would not disagree with this conclusion, Petitioner should be denied a certificate of appealability and the Court should certify to the Sixth Circuit that any appeal would be objectively frivolous.

November 21. 2103.

s/ *Michael R. Merz*
United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140, 153-55 (1985).