# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

MICAH ALAN COX,

        Petitioner,    :    Case No. 3:13-cv-200

  - vs -        District Judge Thomas M. Rose
        Magistrate Judge Michael R. Merz

ROD JOHNSON, WARDEN,
  Madison Correctional Institution,
        .    :
        Respondent.

## SUPPLEMENTAL REPORT AND RECOMMENDATIONS

      This habeas corpus case is before the Court on Petitioner's Objections (Doc. No. 23) to the Magistrate Judge's Report and Recommendations (the "Report," Doc. No. 20), recommending the Petition be dismissed with prejudice. Judge Rose has recommitted the matter to the Magistrate Judge for further analysis in light of the Objections (Doc. No. 24).

**Ground One:  Failure to Hold Hearing on Removal of Counsel**

      In his First Ground for Relief, Cox claims he was denied due process of law when the Greene County Common Pleas Court failed to hold a hearing on his *pro se* motion to replace his trial attorney. The Magistrate Judge recommended dismissing this claim on the merits because there is no constitutional right to such a hearing (Report, Doc. No. 20, PageID 1120-21). At

1

PageID 1152-53, Cox supposedly quotes some undisclosed case that says he has a right to such a hearing, but the citation he gives is "*Id.* at 1130." At PageID 1153, Cox cites *United States v. Jennings*, 945 F.2d 129 (6th Cir. 1991), which held not that there was a constitutional right to a hearing, but that the court of appeals could not tell from the record what reasons defendants had for their dissatisfaction with counsel. *Id.* at 132, noting that the letters submitted by the defendants asking for new counsel had not been made a part of the record. The Second District Court of Appeals noted here that Cox failed to state any reasons for his dissatisfaction, made the request only three days before trial and failed to appear for trial, then expressed no dissatisfaction with counsel when the case was actually tried. *State v. Cox*, 2012-Ohio-2100, 2012 Ohio App. LEXIS 1839, ¶¶ 28-31. *Jennings* recognizes that a late motion to discharge counsel, especially when no reasons are given, is a relatively transparent ploy to avoid trial.

*Wilson v. Mintzes,* 761 F.2d 275 (6th Cir. 1985), involved an attempt by a defense attorney to "remove himself from the case in front of the jury." That is obviously far different from what happened here, where Cox expressed no dissatisfaction with counsel during the actual trial. Finally, Cox cites *United States v. Coker*, 1999 U.S. App. LEXIS 34583 (6th Cir. 1999). But there the court of appeals refused to reverse for failure to allow substitution of counsel because defendant had never moved for it nor shown good cause. For these reasons, the Magistrate Judge again recommends dismissing this claim on the merits.

**Ground Two: Insufficient Evidence**

In his Second Ground for Relief, Cox argues that there was insufficient evidence

2

presented to support his conviction on any of Counts 1, 2, 3, or 4. The Report analyzed this Ground for Relief separately for each Count of the Indictment and the Objections also treat the Counts separately.

**Count 1:  Conspiracy to Traffic in Cocaine in the Vicinity of a Juvenile**

Cox was convicted of conspiring to traffic in crack cocaine on September 21, 2009, in an amount greater than ten grams but less than twenty-five grams and in the vicinity of a minor. The court of appeals found that the following evidence was of record:

> [*P43] The evidence adduced at trial established all of the elements necessary to sustain Cox's conviction for conspiracy to commit trafficking in crack cocaine (at least ten grams but less than twenty-five) in the vicinity of a juvenile, in violation of R.C. 2923.01(A)(2) and 2925.03(A)(1). Initially, we note that both Younker and Rodriguez testified that Younker's two year old son was in the backseat of the vehicle where the drug transaction took place. Rodriguez testified that Younker informed her that Cox had crack cocaine for sale.
>
> [*P44] Younker testified that she explained to Cox what Rodriguez wanted, and Cox indicated to Younker that he would provide that amount prior to the sale. Younker testified that Cox stated that while he had a portion of the crack cocaine in his possession, he would have to get the rest from his brother, Barnett. If Younker's testimony was deemed credible, then a jury could clearly find that a conspiracy clearly existed between Cox, Younker, and Barnett to facilitate and commit the sale of at least ten but not [sic] less than twenty-five grams of crack cocaine.
>
> [*P45] Younker further testified that while they were on the way to the location of the drug transaction, Cox removed a baggie of crack cocaine from his pocket and handed it to his brother, Barnett, in the back seat of the vehicle. The evidence further established that Cox was present in the vehicle while the sale of the crack cocaine took place. Once the sale to Rodriguez was completed for $700.00, Cox

3

> distributed the drug money to Younker and Barnett, keeping $100.00 for himself. We also note that Det. Miller testified that on October 1, 2009, Cox stated that he was the "same dude you got it from the last time." Det. Miller testified that he understood this statement to mean that Cox was the individual who sold the crack cocaine to Rodriguez on September 21, 2009, when Det. Penrod was posing as Det. Miller's girlfriend to facilitate the drug transaction. Thus, a review of the record convinces us that the State's evidence, taken in its entirety, was sufficient to sustain Cox's conviction for conspiracy to commit trafficking in crack cocaine (at least ten grams but less than twenty-five) in the vicinity of a juvenile.

*State v. Cox, supra,* ¶¶ 43-45.

In his Objections, Cox emphasizes that Rodriquez testified Cox had nothing to do with the drug deals (Objection, Doc. No. 23, PageID 1154, citing Trial Tr. PageID 754-55.) At that point in the trial, Rodriquez was being cross-examined by Cox's attorney. She remembered telling the undercover officer with whom she was working that she had to get out of the car she was in and go over to a car which had Jennifer Younker, Micah Cox, and Chris Barnett in it because Micah and Jennifer did not want the person she was with to see them. She did that and was handed the drugs by Chris and paid the money to Jennifer. She did not speak with Cox although he was there. She answered several leading questions from Cox's attorney to the effect that Cox was not part of the transaction.

Relying on this testimony, Cox argues that "if Rodriquez testifies that I did not do anything wrong, the only testimony left is Younkers and Younkers is a co-conspirator." (Objections, Doc. No. 23, PageID 1154.) Cox claims that with only a co-conspirator's testimony offered, he cannot be convicted of the conspiracy charged in Count 1.

The statute on which Cox relies is Ohio Revised Code § 2923.01(H)(1).[1] That statute

---

[1] Cox miscites the statute as Ohio Revised Code § 2943.01 which defines the term "magistrate" for Ohio purposes.

4

provides "[n]o person shall be convicted of conspiracy upon the testimony of a person with whom the defendant conspired, unsupported by other evidence." But Younker's testimony is not unsupported by other evidence. Rodriquez testified that Cox was present and also that Younker had told her Cox had cocaine for sale. The physical evidence of the crack cocaine supports the existence of the conspiracy charge. There is also the testimony of Detective Miller. Thus Cox was not convicted solely on the testimony of Younker and there was sufficient evidence to convict him on Count 1.

**Count 2: Complicity in Drug Trafficking**

With respect to his conviction on Count 2 of complicity in drug trafficking, Cox relies on essentially the same argument that he made as to Count 1, to wit, that Younkers is a co-conspirator. But a complicity conviction does not require evidence beyond the testimony of a co-conspirator. Younkers' testimony was accepted by the jury and is sufficient for conviction on Count 2.

**Count 3: Possession of Crack Cocaine**

In Count 3 Cox was convicted of possessing the crack cocaine which formed the basis for Counts 1 and 2. As the court of appeals noted, Younkers testified that Cox handed the baggie of crack cocaine to Barnett immediately prior to arrival at McDonald's, Barnett handed it to Rodriquez, and Rodriquez handed it over to the police. *State v. Cox, supra,* ¶ 58. Cox relies on

the same objection that he made as to Counts 1 and 2, to wit, that Younkers is a co-conspirator. Once again, testimony other than a co-conspirator's is not needed to establish possession and the jury plainly believed what Younkers said about how Barnett got the baggie.

**Count 4:  Trafficking in Powder Cocaine**

Cox was convicted on Count 4 for offering to sell powder cocaine to Detective Miller on October 1, 2009.  The portion of the Second District's opinion on this claim on direct appeal is reproduced in full in the Report (Doc. No. 20, PageID 1132-33).  The Report found this decision was not an unreasonable application of *Jackson v. Virginia*, 443 U.S. 307 (1979).  Cox objects, but the objection does not require additional analysis beyond what is given in the Report.

**Ground Three:  Ineffective Assistance of Trial Counsel**

In his Third Ground for Relief, Cox argues he received ineffective assistance of trial counsel when his trial attorney failed to properly object to the admission of the audio tape as trial exhibit #1.  The Second District Court of Appeals decided this claim on the merits, applying the relevant precedent, *Strickland v. Washington*, 466 U.S. 668 (1984).  *State v. Cox, supra,* ¶¶ 87-93.

Cox's claim is that the jury heard inadmissible portions of the tape.  He offered numerous citations to the record that supposedly supported his position. The Report analyzed each of these and concluded they did not prove Cox's claim(Report, Doc. No. 20, PageID 1138-41).

6

Ultimately, the Report concluded the Second District's decision was not an unreasonable application of *Strickland*.

In his Objections, Cox argues that somehow the Magistrate Judge has relied on his own personal knowledge as a basis to deny the Petition (Objections, Doc. No. 23, PageID 1160). That is incorrect. The only thing the Magistrate Judge has done which seems to have triggered this assertion is to rely on the presumption of regularity of the record (Doc. No. 20, PageID 1141). That of course is perfectly proper and does not implicate improper judicial "interest" in the outcome, which is what Cox is claiming by his citation of *Tumey v. Ohio*, 273 U.S. 510 (1927).

There is no doubt that Exhibit 1 contains inadmissible evidence, but Cox has not proved that those portions were played to the jury. Cox claims that under Fed. R. Civ. P. 12(c), this Court must accept his allegation that that portion was played for the jury is true (Objections, Doc. No. 23, PageID 1161). Fed. R. Civ. P. 12 addresses the pleading stages of civil cases and considerably different rules apply in habeas corpus cases. In particular, a habeas court must accept the factual determinations of the state courts unless the petitioner shows that those determinations are clearly wrong based on the evidence that was before state courts. 28 U.S.C. §§ 2254(d)(2) and (e)(1). That showing cannot be based on an evidentiary hearing in the federal court. *Cullen v. Pinholster,* 563 U.S. ___, 131 S.Ct. 1388 (2011).

Cox makes much of Judge Wolaver's comments about Exhibit 1, but as the Report emphasizes, those comments show Judge Wolaver was attentive to the problem and do not support an inference that he allowed the jury to hear inadmissible evidence.

Cox relies on *Barnes v. Elo*, 231 F.3d 1025 (6th Cir. 2000), to support his claim that he

7

should be given an evidentiary hearing. *Barnes* represented the law at the time it was handed down and this Court frequently held evidentiary hearings in habeas corpus cases up until the time that practice was repudiated by the Supreme Court in *Pinholster, supra*. But *Pinholster* is now the controlling authority. Cox also relies on *Blackledge v. Allison*, 431 U.S. 63 (1977), but that case was handed down even before the Antiterrorism and Effective Death Penalty Act of 1996 effectively overruled the precedent under which *Blackledge* was decided, *Townsend v. Sain*, 372 U.S. 293, 313 (1963).

**Ground Four: Ineffective Assistance of Appellate Counsel**

In his Fourth Ground for Relief, Cox asserted he received ineffective assistance of appellate counsel in several respects. The Report found this Ground for Relief was procedurally defaulted because Cox's presentation of the claim to the Second District Court of Appeals was untimely (Report, Doc. No. 20, PageID 1144-46).

Cox objects that he did send his 26(B) Application to the correct court when he sent it to Gregory Brush "because the rule states to file in the court of appeals where your appeal was heard, and my direct appeal was heard in the Second District Court of Appeals, which Gregory Brush is the Second District Clerk of Courts and had the authority to file my documents." (Objections, Doc. No. 23, PageID 1166.) Cox is just plain wrong on this point. Gregory Brush is and was at all relevant times Clerk of Court for Montgomery County. In that capacity he has authority to file documents for the Montgomery County Court of Appeals. But Cox was convicted in the Greene County Common Pleas Court and his direct appeal was heard in the

Greene County Court of Appeals. The Clerk for both of those courts at all relevant times was Ms. Terri Mazur. While the judges of the Second District hear cases from a number of counties, including Montgomery and Greene, each Ohio county has its own separately elected Clerk of Courts and they are not authorized to accept filings for one another. That is why Mr. Brush's office returned the 26(B) Application instead of filing it.[2]

Cox also claims the benefit of *Martinez v. Ryan*, 566 U.S. ___, 132 S. Ct. 1309, 182 L. Ed. 2d 272 (2012), to excuse his failure to timely file. *Martinez*, however, only applies to claims of ineffective assistance of trial counsel.

**Conclusion**

Having reconsidered the matter in light of Cox's Objections, the Magistrate Judge again respectfully recommends the Petition be dismissed with prejudice. Because reasonable jurists would not disagree with this conclusion, Petitioner should be denied a certificate of appealability and the Court should certify to the Sixth Circuit that any appeal would be objectively frivolous.
February 4, 2014.

s/ *Michael R. Merz*<br>United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the

---

[2] Lest Cox again object that the Magistrate Judge is relying on personal knowledge, the Court takes judicial notice of the incumbencies of Mr. Brush and Ms. Mazur which are open and notorious. See Fed. R. Evid. 201.

proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140, 153-55 (1985).